UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ARTHUR SOTAK,

      Plaintiff,

 - against -

McGRAW-HILL COMPANIES, INC.

      Defendant.

------------------------------------------------------------x

Judge Hellerstein

07 CV 2698

ECF Case

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

  Plaintiff Arthur Sotak ("plaintiff" or "Sotak"), by his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complaining of defendant McGraw-Hill Companies, Inc. ("McGraw-Hill" or "defendant"), alleges:

## NATURE OF CLAIMS

  1. This proceeding is brought to remedy discrimination on the basis of age in the terms, conditions and privileges of employment, and retaliation for opposition to unlawful employment actions, in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law, New York Executive Law § 296 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "Administrative Code").

  2. Injunctive and declaratory relief, damages, statutory penalties and other appropriate legal and equitable relief are sought.

236334 v1

## JURISDICTION AND VENUE

3. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 1, 2005, complaining of the acts of age discrimination and retaliation alleged herein. The EEOC issued plaintiff a Notice of Right to Sue on February 7, 2007. Plaintiff has complied fully with the administrative prerequisites of the ADEA.

4. Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of the Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

5. Jurisdiction of this Court is proper under 29 U.S.C. § 626(c) and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Executive Law and the Administrative Code claims pursuant to 28 U.S.C. § 1367.

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper within the Southern District of New York because defendant resides in this district and this is where a substantial portion of the unlawful practices complained of herein occurred.

## PARTIES

7. Plaintiff Sotak is sixty-four years old. He was born on April 30, 1942. He was employed at McGraw-Hill and its predecessor company from 1987 until he was fired on June 24, 2005.

8. Defendant McGraw-Hill does business in several areas including financial services, education and business information markets. McGraw-Hill is an employer within the meaning of the ADEA, the Executive Law, and the Administrative Code.

## FACTUAL ALLEGATIONS

9. Plaintiff began his career in the college publishing industry working for McGraw-Hill from 1969 to 1979 as a sales representative and, later, as acting District Manager. Sotak spent the next five years with Harper & Row as a district manager and editor. He then moved to W.H. Freeman as a regional account manager.

10. In 1987, he was hired by Richard D. Irwin, Inc. ("Irwin"), as a salesman to sell textbooks to colleges and universities, to work with professors to develop manuscripts for textbooks and as a regional editor. In 1997, McGraw-Hill purchased Irwin and plaintiff became a McGraw-Hill employee again working as a senior sales representative.

11. As a senior sales representative at McGraw-Hill, plaintiff's responsibilities included selling textbooks to colleges and universities and working with professors and editors to develop new textbooks. Throughout his career, plaintiff was consistently assigned to high profile schools such as Harvard University, the Massachusetts Institute of Technology, Columbia University, Princeton University and the University of Pennsylvania.

12. Plaintiff's job performance at McGraw-Hill was always very good. In particular, each year from 1997 through 2004, his annual performance reviews stated that he either "fully met" or "exceeded" McGraw-Hill's expectations. He received these positive reviews even though, for the last few years, the textbook publishing business had deteriorated in his geographic selling area (New York/New Jersey) and in his particular area of expertise (economics and business textbooks).

13. Beginning in 2004, Sotak's former direct supervisor, Michael Roseman ("Roseman"), asked Sotak what his future plans were with McGraw-Hill. Sotak told Roseman and Roseman's boss at the time, Regional Sales Manager Vinnie Kitts ("Kitts"), that he planned

to stay with the Company until he retired. After Roseman left McGraw-Hill in or about November 2004, Kitts and Arthur Levine ("Levine"), Sotak's new boss, began asking him when he was going to retire. Sotak had no immediate plans to retire and told them so.

14. On information and belief, because Sotak refused to retire and because McGraw-Hill wanted younger salespeople, defendant began to create a paper trail to justify the eventual termination of Sotak's employment.

15. In particular, each salesperson is given an annual target sales goal and is evaluated at the end of the year based, in part, on how much of that target goal the salesperson meets. On or about January 26, 2005, just after the close of the 2004 calendar year, Kitts stated to Sotak that, since Sotak was not going to meet his sales quota for 2004, defendant was going to transfer some of his sales revenue to his colleague Katherine Mattison ("Mattison") so that she could meet her sales quota. In particular, Mattison would be given credit for textbooks Sotak sold to the College of Staten Island even though she had nothing to do with these sales. On information and belief, Mattison is approximately 30 years younger than Sotak.

16. In contrast, McGraw-Hill did not provide Sotak with any such assistance in meeting his sales goals. Indeed, the Company recognized that he faced unique challenges because, as his 2003 review states, "[t]he publishing environment in NY/NJ underwent an about face in terms of ordering patterns and quantities ordered." Moreover, McGraw-Hill knew that textbook sales to schools were declining in general because an increasing percentage of students purchased books via the internet, rather than traditional campus bookstores. Rather than take these industry factors into account in setting Sotak's sales quota, the Company actually <u>increased</u> his sales quota for 2004 by more than 10%.

17. On or about February 12, 2005, less than one month after it transferred a portion of Sotak's sales revenue to a younger employee, McGraw-Hill placed Sotak on a Performance Improvement Plan ("PIP"), allegedly because he had not met his sales quotas for the past few years. In fact, the sales quotas represented only 30% of his overall performance rating. Accordingly, his overall performance reviews for 2001, 2002 and 2003, which factored in his sales quotas, showed that he either "exceeded" or "fully met" McGraw-Hill's performance expectations.

18. McGraw-Hill does not expect its salespeople to reach 100% of their annual sales quota. Rather, under written company policy, McGraw-Hill pays a bonus for "exceptional achievement in sales" to any salesperson who reaches 93% of his annual sales goal by the end of the calendar year.

19. On information and belief, over the last several years, most sales representatives did not reach their annual sales quotas.

20. Nonetheless, under the PIP, McGraw-Hill directed Sotak, among other things, to reach 68% of his sales quota by September 30, 2005, or he would be "given a written warning." McGraw-Hill did not threaten to terminate Sotak's employment at that time.

21. Despite McGraw-Hill's unreasonably high demands, Sotak redoubled his efforts by securing new business that he had been working on and he was on track to meet his goal by the September 30 deadline. McGraw-Hill was aware that Sotak was on target because Kitts sent Sotak an e-mail stating that Sotak was "doing a good job . . . adhering to the" February PIP.

22. Sotak quickly realized, however, that McGraw-Hill was setting him up to fail. In particular, on or about March 8, 2005, less than one month after placing Sotak on a PIP,

McGraw-Hill sent Sotak a second performance warning setting even higher goals. McGraw-Hill now required that Sotak reach "at least 68%-72%" of his quota by the September 30 deadline and further threatened Sotak with termination of his employment if he did not meet defendant's demands. Moreover, on April 1, 2005, after 28 years of service for defendant and its predecessor company, McGraw-Hill for the first time gave Sotak a negative overall performance evaluation, stating that he only "minimally m[et] expectations."

23. In or about April 2005, Sotak told Kitts that the goals McGraw-Hill set for him in the PIP were unreasonably high, that they were designed to get him fired, and that defendant wanted to fire him because of his age. Kitts did not deny Sotak's allegations of age discrimination. Rather, in a manner suggesting that Sotak's allegations of age discrimination were true, Kitts responded, "I can't tell you if there is or isn't."

24. Shortly after Sotak complained to Kitts about age discrimination, on or about June 24, 2005, McGraw-Hill fired Sotak. McGraw-Hill did not even give Sotak a chance to meet the goals it had set for him in the PIP.

25. According to McGraw-Hill, Sotak's position was being eliminated as part of a larger reduction-in-force ("RIF") because the industry was "static" and "contracting," and therefore, the company was "collapsing" Sotak's territory with others. McGraw-Hill contended that employees who were "not considered absolutely essential" were being dismissed. However, upon information and belief, out of a sales force of approximately 280 employees in defendant's Higher Education division, only four were dismissed as part of the purported RIF. Of those four, Sotak was the only Senior Sales Representative (out of approximately 70 throughout the Higher Education division); the other three employees selected for dismissal were more junior employees who had not reached Senior status. Upon information and belief, McGraw-Hill's

chose <u>not</u> to dismiss two Senior Sales Representatives who were much younger than Sotak (ages 42 and 31).

26. In an effort to explain away its discriminatory and retaliatory actions, McGraw-Hill asserted that not all employees within the Higher Education division were eligible for the RIF; rather, McGraw-Hill claims it selected one employee from each of four regional locations (St. Louis, Atlanta, Massachusetts/Connecticut and New York/New Jersey) within the McGraw-Hill Irwin group (a subset of the McGraw-Hill Higher Education division). This explanation, however, further establishes that McGraw-Hill fired Sotak because of his age. In particular, Sotak was, then age sixty-three, the oldest salesperson within the New York/New Jersey location of the McGraw-Hill Irwin group. Upon information and belief, the other salespeople within Sotak's group not selected for dismissal were 42, 31 and 24 years of age.

27. On information and belief, in early 2005, McGraw-Hill placed other older salespeople on PIPs and then dismissed them later in the year. On information and belief, a number of these salespeople have since filed charges of age discrimination against defendant with the EEOC.

<u>FIRST CAUSE OF ACTION</u>

<u>Age Discrimination Under the ADEA</u>

28. Plaintiff repeats and realleges paragraphs 1-27 of this Complaint as if fully set forth herein.

29. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his age, in violation of the ADEA.

30. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory acts.

31. Defendant knew that its actions constituted unlawful discrimination on the basis of age or showed reckless disregard for plaintiff's statutorily protected rights. These violations are willful within the meaning of the ADEA.

## SECOND CAUSE OF ACTION

### Retaliation Under the ADEA

32. Plaintiff repeats and realleges paragraphs 1-31 of this Complaint as if set forth herein.

33. By the acts and practices described above, defendant has retaliated against plaintiff for his opposition to unlawful employment practices in violation of the ADEA.

34. Defendant knew that its actions constituted unlawful retaliation or showed reckless disregard for plaintiff's statutorily protected rights. These violations are willful within the meaning of the ADEA.

35. Plaintiff is now suffering irreparable injury and monetary damage from defendant's discriminatory conduct and will continue to do so unless and until the Court grants relief.

## THIRD CAUSE OF ACTION

### Age Discrimination Under the Executive Law

36. Plaintiff repeats and realleges paragraphs 1-35 of this Complaint as if fully set forth herein.

37. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his age, in violation of the Executive Law.

38. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

## FOURTH CAUSE OF ACTION

### Retaliation Under the Executive Law

39. Plaintiff repeats and realleges paragraphs 1-38 of this Complaint as if set forth herein.

40. By the acts and practices described above, defendant has retaliated against plaintiff in violation of the Executive Law.

41. Plaintiff is now suffering irreparable injury and monetary damage from defendant's discriminatory conduct and will continue to do so unless and until the Court grants relief.

## FIFTH CAUSE OF ACTION

### Discrimination Under the Administrative Code

42. Plaintiff repeats and realleges paragraphs 1-41 of this Complaint as if set forth herein.

43. By the acts and practices described above, defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of her age, in violation of the Administrative Code.

44. Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

45. Plaintiff is now suffering irreparable injury and monetary damage from defendant's discriminatory conduct and will continue to do so unless and until the Court grants relief.

## SIXTH CAUSE OF ACTION

### Retaliation Under the Administrative Code

46. Plaintiff repeats and realleges paragraphs 1-45 of this Complaint as if set forth herein.

47. By the acts and practices described above, defendant has retaliated against plaintiff in violation of the Administrative Code.

48. Defendant acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

49. Plaintiff is now suffering irreparable injury and monetary damage from defendant's discriminatory conduct and will continue to do so unless and until the Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) declaring that the acts and practices complained of herein are in violation of the ADEA, the Executive Law, and the Administrative Code;

(b) enjoining and permanently restraining these violations of the ADEA, the Executive Law, and the Administrative Code;

(c) directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) directing defendant to reinstate plaintiff to the position he would have occupied but for defendant's unlawful conduct and making him whole for all earnings he would have received but for defendant's unlawful conduct, including, but not limited to, wages, pension, 401(k) contributions, bonuses, and other lost benefits;

(e) directing defendant to pay plaintiff an additional amount as liquidated damages, as provided by Section 7(b) of the ADEA, 29 U.S.C. § 626(b);

(f) directing defendant to pay plaintiff punitive damages as provided by the Administrative Code;

(g) directing defendant to pay an additional amount to compensate plaintiff for the emotional distress defendant's unlawful conduct has caused plaintiff;

(h) awarding plaintiff such interest as is allowed by law;

(i) awarding plaintiff his reasonable attorneys' fees and costs; and

(j) granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
April 3, 2007

VLADECK, WALDMAN, ELIAS
& ENGELHARD, P.C.

By: *[signature]*
Karen Cacace (KC 3184)
Valdi Licul (VL 1468)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300