PROSKAUER ROSE LLP
Gregory I. Rasin
Steven D. Hurd
Nathaniel M. Glasser
1585 Broadway
New York, New York 10036
T: 212.969.3000
F: 212.969.2900
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ARTHUR SOTAK,

     Plaintiff,

 against

McGRAW-HILL COMPANIES, INC.,

     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No.: 07-CV-2698 (AKH)

ECF Case

**DEFENDANT'S RULE 56.1
STATEMENT OF UNDISPUTED
MATERIAL FACTS**

   Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the

Southern District of New York, Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill"

or the "Defendant"), by its attorneys Proskauer Rose LLP, submits the following Statement of

Undisputed Material Facts as to which, for purposes of Defendant's motion for summary

judgment, Defendant contends there is no genuine issue to be tried.[1]

---

[1] Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts are supported by the
Declaration of Gregory I. Rasin, Esq. ("Rasin Decl.") and accompanying exhibits. References to the deposition
transcripts of Arthur Sotak, David Littlehale, Vincent Kitts, Arthur Levine, Keith Eng and Kathy Foley are noted as
"Sotak Tr. _," "Littlehale Tr. _," "Kitts Tr. _," "Levine Tr. _," "Eng Tr. _," and "Foley Tr._," respectively, and are
annexed to the Rasin Decl. as Exs. A, B, C, D, E and F respectively.  All other exhibits annexed to Rasin Decl. are
noted herein as "Rasin Ex. _."

**A.    The Company.**

1.      McGraw-Hill Irwin ("MHI") is a division of McGraw-Hill Education which develops and sells higher education textbooks and media primarily for the Business and Economics disciplines.  (*See* Eng Tr. 9:3-10:5.)

2.      The MHI sales force generally is divided into two groups: outside field sales representatives and inside sales representatives.  (Rasin Decl., Ex. P.)

3.      Outside field sales representatives work out of their homes and are responsible for a territory, or cluster of schools, in a geographic region close to their home office.  (Foley Tr. 21:16-19; Rasin Decl., Ex. P.)  They service schools by meeting face-to-face with their clients. (Foley Tr. 21:9-15; Rasin Decl., Ex. P.)

4.      Inside sales representatives, on the other hand, work out of a call center in Dubuque, Iowa.  (*Id.*)  They cover accounts nationwide by telephone rather than in person.  (*Id.*)

**B.    Plaintiff's Employment History with McGraw-Hill.**

5.      In 1987, Plaintiff Arthur Sotak ("Plaintiff" or "Sotak") began working for the company "Richard D. Irwin" as a sales representative for its Business Publication, Inc. division. (Sotak Tr. 17:2-18:10.)

6.      Plaintiff's primary function was to sell college textbooks to business schools. (Sotak Tr. 17:17-23, 46:11-47:2.)

7.      He held that position until Richard D. Irwin was acquired by McGraw-Hill in 1996 to form MHI.  (Sotak Tr. 19:15-20, 20:8-12; Littlehale Tr. 11:2-4.)

8.      From 1996 through his termination in 2005, Plaintiff worked for MHI as a Sales Representative or a Senior Sales Representative, the primary difference being a change in pay. (Sotak Tr. 24:22-25, 27:25-28:10.)

9.     Plaintiff worked out of his home in New Jersey and covered schools located in the New York and New Jersey geographic region. (Sotak Tr. 17:14-16, 23:9-12, 25:12-19.)

10.     In 1998 and 1999, Plaintiff reported directly to Vincent Kitts ("Kitts"), who at the time was a Regional Manager. (Kitts Tr. 9:17-21.)

11.     When Kitts was promoted to Senior Regional Manager in 1999, he hired Mike Roseman ("Roseman") to replace him, and Roseman became Plaintiff's direct supervisor. (Kitts Tr. 13-16.) Roseman served as Plaintiff's direct supervisor until Roseman left MHI in November 2004. (Kitts Tr. 13:22-14:8.)

12.     In November and December 2004, Plaintiff reported directly to Kitts once again. (Kitts Tr. 14:11-12.)

13.     The sales regions were then rearranged, and from January 2005 through Plaintiff's termination effective July 2005, Plaintiff reported directly to Arthur Levine ("Levine"), Northeast Regional Manager. (Levine Tr. 52:3-10; Sotak Tr. 18-24.)

14.     At all relevant times, Plaintiff reported indirectly to David Littlehale ("Littlehale"), Vice President, National Sales Manager for MHI. (Littlehale Tr. 11:18-12:3.)

## C.     Plaintiff's Performance.

15.     The primary responsibility of a sales representative is to make and grow the sales of textbooks to the accounts (*i.e.* schools) in his or her territory. (*C.f.* Sotak Tr. 177:3-5; Littlehale Tr. 12:4-9.) During Plaintiff's employment with MHI, each representative was assigned a sales goal, or quota, for the year. (See Foley Tr. 23:24-24:10; 28:11-17)

16.     A representative's quota is determined by taking the base – the installed sales in any given territory – and, through several calculations established in a quota setting model, increasing that number by the percentage that the representative is expected to grow his or her territory. (Littlehale Tr. 44:16-47:6; Foley Tr. 28:11-17; Rasin Decl., Ex. G.)

17.     Each representative is expected to achieve 100% of their sales goal each year. (*See* Sotak Tr. 177:4-5.)

18.     Under the Incentive Award Plan applicable to MHI, a Senior Sales Representative who meets their goal is entitled to 100% of the planned award compensation ("PAC") at goal. (Rasin Decl., Ex. H.)

19.     Sales Representatives who make between 93% of goal and 99% of goal are entitled to various percentages of the PAC, ranging from 20% of PAC to 89% of PAC, respectively.  (Rasin Decl., Ex. H.)

20.     Sales Representatives who make less than 93% of goal are not entitled to an incentive award.  (Rasin Decl., Ex. H.)

21.     A representative only receives 100% of PAC if he makes 100% of goal.  (Rasin Decl., Ex. H.)

22.     In 2002, Plaintiff achieved 94.7% of his sales goal.  (Sotak Tr. 171:11-14.)

23.     In his 2002 performance review, his sales performance was rated a 2 out of 5 ("performance needs improvement to meet expectations").  (Sotak Tr. 176:20-25; Rasin Decl., Ex. I.)

24.     Plaintiff testified that he agreed with that rating because "you always try to make your sales quotas.  It is part of your overall evaluation."  (Sotak Tr. 177:2-5.)

25.     Plaintiff's overall performance rating for his 2002 performance review was "performance achieved expectations."  (Sotak Tr. 177:6-9; Rasin Decl., Ex. I.)

26.     In 2003, Plaintiff achieved only 90.2% of his sales goal.  (Sotak Tr. 163:20-164:22.)

27.     In his 2003 performance review, Plaintiff was again rated a 2 ("performance needs improvement to meet expectations") for his sales performance. (Sotak Tr. 165:9-11; Rasin Decl., Ex. J.)

28.     Plaintiff agreed with that rating and believed that he needed to improve to meet his sales goal. (Sotak Tr. 165:12-15.)

29.     Plaintiff's overall performance rating for 2003 was "performance achieved expectations." (Sotak Tr. 169:2-6; Rasin Decl., Ex. J.)

30.     In 2004, Plaintiff only achieved 89.2% of his sales goal. (Rasin Decl., Ex. K ; Sotak Tr. 156:15-19.)

31.     In his 2004 performance review, Plaintiff received a rating of "meets some performance standards and requires development" for both his sales performance and his overall performance ratings. (Rasin Decl., Ex. K.)

32.     In the "Overall Comments" section of his 2004 review, Plaintiff agreed that his performance needed to improve, stating: "As I have not made goal I rate my performance needs to be [sic] meet some performance standards and requires improvement." (Rasin Decl., Ex. K.)

33.     In completing the self-appraisal portion of his 2004 performance evaluation, Sotak gave himself the same overall rating. (Rasin Decl., Ex. S.)

**D.     Sotak's Performance Improvement Plan.**

34.     Under MHI guidelines, a Sales Representative should be considered for a performance improvement plan ("PIP") if he made less than 95% of goal for two consecutive years, or made less than 85% of goal in a single year. (Rasin Decl., Ex. L; Levine Tr. 87:7-88:6; Eng Tr. 92:20-93:4.)

35.     Although Plaintiff made less than 95% of his sales goal in both 2002 and 2003 (*see* Rasin Decl., Exs. I & J), he was not placed on a PIP in 2004.

36.    After Plaintiff missed his sales goal in 2004, reaching only 89.2% of goal, he had missed goal three years in a row.  (Rasin Decl., Exs. I, J & K.)

37.    Because Plaintiff did not meet his sales goal in 2002, 2003, or 2004, Plaintiff was placed on a PIP in early 2005.  (Sotak Tr. 87:9-88:6; Kitts Tr. 75:4-9, 95:9-13.)

38.    Kitts felt a PIP was necessary to help guide Plaintiff so he would improve his sales performance.  (Kitts Tr. 95:9-13; Levine Tr. 56:20-57:17.)

39.    In February 2005, Plaintiff was informed he was going to be placed on a PIP due to his poor sales numbers for the three previous years.  (*See* Rasin Decl., Ex. M.)

40.    On February 14, 2005, Kitts emailed Plaintiff a draft of the PIP.  (Rasin Decl., Ex. M.)  Although the PIP was not in final form, Kitts wanted to give Plaintiff a draft so that he could begin improving his performance immediately.  (Kitts Tr. 105:5-25.)

41.    A near-final version of the PIP was presented to Plaintiff on April 7, 2005.  (Rasin Decl., Ex. N.)

42.    Plaintiff requested revisions to paragraphs 3 and 6 of the draft PIP, and Kitts made revisions to those paragraphs.  (*See* Rasin Decl., Exs. O & R.) (*see id.*)

43.    Kitts presented the final version of the PIP to Plaintiff on April 29, 2005.  (Rasin Decl., Ex. O.)

E.    **MHI Reduction in Force.**

44.    After Kevin Kane ("Kane") became President of MHI in or about July 2004, he and Littlehale had multiple discussions about restructuring and reorganizing the field sales organization in order to maximize efficiencies and save costs.  (Littlehale Tr. 61:10-15, 62:2-65:7.)

45.    These discussions included implementing reductions in force ("RIFs").  (Littlehale Tr. 63:11-18.)

46.     Under the reorganization plan, sales territories would be consolidated, and some accounts would be moved from outside field representatives to inside sales representatives. (Eng Tr. 32:12-16.)

47.     Littlehale implemented the first of a series of RIFs in or about November 2004. (Littlehale Tr. 65:14-19.)

48.     In June 2005, Littlehale implemented a second RIF, which included the termination of Plaintiff's employment. (Littlehale Tr. 67:7-19.)

49.     Littlehale was the sole decision-maker regarding which sales representatives were selected for inclusion in the June 2005 RIF. (Littlehale Tr. 67:11-13.)

50.     In each of the RIFs, Littlehale decided whose employment was to be terminated by evaluating possible consolidation of territories. (*See* Littlehale Tr. 64:17-65:2, 67:11-13.)

51.     Specifically, with respect to the June 2005 RIF which involved Plaintiff, Littlehale began by reviewing the nationwide MHI sales force by geographic region and determining in which geographic regions the business could be sustained with one less sales representative. (Littlehale Tr. 67:20-68:3; Rasin Decl., Ex. P.)

52.     Once he determined the geographic regions that could support a consolidation of territories, Littlehale then compared the performance of sales representatives within those geographic regions. (Littlehale Tr. 68:11-19.)

53.     He focused on two criteria – sales performance (i.e. percentage of goal met in the previous four years) and overall performance rating (i.e. the overall rating received on an annual performance review. (Littlehale Tr. 68:15-19; Rasin Decl., Ex. P.)

54.     The primary consideration, however, was the sales-to-goal criteria. (Littlehale Tr. 68:11-12.)

55.     One of the four regions Littlehale concluded could support a consolidation of territories was the New York and New Jersey region.  (Littlehale Tr. 67:22-68:7; Rasin Decl., Ex. P.)

56.     By both criteria – sales performance and overall performance rating – Plaintiff was the lowest performer in the New York/New Jersey region.  (Rasin Decl., Ex. K; *see also* Littlehale Tr. 68:8-14.)

57.     Specifically, Plaintiff had made less than 95% of his sales goal for three consecutive years and received an overall performance rating of 2 in 2004.  (Rasin Decl., Exs. I, J, K & P.)

58.     Sotak was the only representative in the region to have declining sales, let alone sales less than 95% of goal, for three consecutive years.  (Rasin Decl., Exs. P & Q.)

59.     In addition, in 2004, he had the lowest achievement of sales goal and the lowest overall performance rating in the region.  (Rasin Decl., Exs. P & Q.)

60.     By contrast, no other representative in the region had missed their sales goal for two consecutive years, let alone three.  (Rasin Decl., Ex. Q.)

61.     Specifically, sales representatives Joy Golden, Martina Downey, and Katherine Mattison had achieved 111.4%, 99.7% and 99.5% of their 2004 sales goals, respectively, and Ms. Downey had achieved 82.2% of goal in 2003, 102.4% of goal in 2002, and 119.5% of goal in 2001. (Rasin Decl., Ex. Q.)[2]

62.     Furthermore, Golden, Downey and Mattison had received overall performance ratings of 4, 3, and 3, respectively, for 2004.  (Rasin Decl., Ex. P.)

---

[2]  Ms. Golden and Ms. Mattison had only one year of sales history in the New York/New Jersey region.

63.     Accordingly, based on the criterion used in all territories, Littlehale decided Plaintiff was the appropriate selection to be included in the RIF.  (Rasin Decl., Ex. P.)

64.     Upon Plaintiff's termination, the accounts in his territory were redistributed to other sales representatives in the region and to the inside sales force.  (Littlehale Tr. 112:8-11; Rasin Decl., Ex. P.)

65.     Plaintiff's territory was never filled, and Plaintiff's position was not replaced. (Littlehale Tr. 112:4-7.)

66.     The June 2005 RIF impacted three other geographic regions: Connecticut/Massachusetts, St. Louis, and Atlanta.  (Rasin Decl., Ex. P.)

67.     In each region, Littlehale used the same criteria as he did with the New York/New Jersey region: sales performance and overall performance rating.  (Rasin Decl., Ex. P.)

68.     The other individuals Littlehale selected for termination as part of the June 2005 RIF in those regions were: Deb O'Connell, age 38, from the Connecticut/Massachusetts region; Amy Lange, age 34, from the St. Louis region; and Roberto Torreggiani, age 29, from the Atlanta region.  (Rasin Decl., Ex. P & Q.)

69.     O'Connell, Lange, and Torreggianni were all under 40 years of age at the time of their terminations.  (Rasin Decl., Ex. Q.)

70.     Of the four employees whose employment Littlehale decided to terminate in June 2005, only Plaintiff was over 40 years of age.  (Rasin Decl., Ex. Q.)

71.     Littlehale did not take age into account when making his termination decisions. (Littlehale Tr. 72:15-19, 149:19-25; Eng Tr. 39:23-40:25.)

72.     To the extent that the ages of the individuals considered for the RIF were reviewed at all, it was for Human Resources to understand the impact the RIF would have on

- 9 -

various demographics to ensure compliance with equal employment opportunity laws.  (Eng Tr. 53:14-54:11.)

**F.    Plaintiff's Alleged Complaints.**

73.    Plaintiff's only alleged complaints of age discrimination were to Kitts and Levine. (Sotak Tr. 195:5-15.)

74.    Kitts first learned of Plaintiff's age discrimination claim a year after Plaintiff's termination.  (Kitts Tr. 190:24-191-5.)

75.    Levine never spoke with anyone about Plaintiff's age.  (Levine Tr. 60:23-61:11.)

76.    Littlehale did not learn that Sotak had complained of age discrimination until after Sotak had been discharged.  (Littlehale Tr. 77:9-21, 92:11-13.)

77.    Plaintiff has no documentary evidence of his alleged complaint of age discrimination to Kitts or Levine.

78.    Plaintiff's written comments about the PIP on April 7, 2005 do not say anything about age discrimination.  (*See* Rasin Decl., Ex. R.)

Dated:  May 30, 2008                    Respectfully Submitted,

                                        PROSKAUER ROSE LLP

                                        By:  Gregory I. Rasin
                                             _____
                                             Gregory I. Rasin
                                             Steven D. Hurd
                                             Nathaniel M. Glasser
                                             1585 Broadway
                                             New York, New York 10036
                                             T:  212.969.3000
                                             F:  212.969.2900
                                             grasin@proskauer.com
                                             shurd@proskauer.com
                                             nglasser@proskauer.com
                                             *Attorneys for Defendant*